NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued April 17, 2007
Decided May 7, 2007

**Before**

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

| | |
|---|---|
| No. 06-3231 | Appeal from the United States District Court for the Western District of Wisconsin. |
| SHANNON M. SULLIVAN, <br> *Plaintiff-Appellant*, | |
| *v.* | No. 06-C-25-C |
| VILLAGE OF MCFARLAND, *et al.*, <br> *Defendants-Appellees*. | Barbara B. Crabb, <br> *Chief Judge*. |

**O R D E R**

Shannon Sullivan watched a fellow officer with the Village of McFarland Police Department lose control of his patrol car, spin out while traveling at 40 mph, and jump a curb, but she neither stopped to check on the officer nor sought assistance.  After investigating the incident Police Chief Gregory Leck fired her.  He did not discipline a male officer who, a short time later, drove by the accident scene without realizing that an accident had occurred.  Sullivan sued the Village of McFarland, Leck, and Lieutenant Patrick O'Dell under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* and 42 U.S.C. § 1983, alleging sex discrimination.  The district court granted summary judgment for the defendants.  Because Sullivan has not shown a genuine fact dispute of unequal treatment, we affirm.

## I. History

The facts are construed in the light most favorable to Sullivan. In the early morning hours of December 20, 2003, Sullivan and Joseph Maurer—both probationary police officers—were on duty with Lieutenant Michael Klementz when they received a call from another jurisdiction to assist with a nearby vehicle pursuit. Klementz and Sullivan left the station in separate police cars to join the chase, with Sullivan driving closely behind Klementz. Shortly after they left the station Klementz rounded a corner at 40 mph and lost control of his car, which spun around, jumped a curb while traveling backwards, struck a sign, and stopped against a tree in front of a daycare center. Sullivan saw Klementz's car spin out and jump the curb, but did not see his car hit the sign or the tree. Under police operating procedure she had an affirmative duty to assist a potentially injured officer and no duty to continue a vehicle pursuit where the safety of another officer may be at risk. But Sullivan neither stopped to check on Klementz nor called for assistance. Instead, she drove on to join the pursuit.

Maurer was the last of the three to leave to join the pursuit, and he could not see the others as he drove from the station. He did not see the accident. When he passed the daycare center, he noticed only a squad car parked in front of the building with its lights off. Maurer continued to join the pursuit without stopping or calling for assistance.

After Klementz was taken to the hospital (it turned out he had a concussion), Sullivan and Maurer met with Chief Leck back at the station. He told them it appeared they had made a "rookie mistake," instructed them to submit complete, accurate reports, and then asked the sheriff's department to investigate the accident.

Following the investigation, Leck and O'Dell together reviewed the investigator's report and the separate reports from Sullivan and Maurer. Sullivan stated in her report that she saw Klementz's squad car "drive up over the curb." The investigator's report was more explicit, stating that the car skidded and spun 180 degrees before going over the curb. After reviewing all of the reports, Leck decided, and O'Dell agreed, that Leck should fire Sullivan for failing to respond to an accident that she, apparently, had observed. A videotape from Maurer's car indicated that he did not see any part of the accident. Relying on this and Maurer's confirmation that he did not see the accident, Leck and O'Dell determined that Maurer had no reason to know that Klementz had been in an accident when he passed the daycare center (a fact Sullivan does not dispute), and decided not to discipline him. Leck suspended Klementz for two days without pay for failing to operate his vehicle safely. After his suspension, Klementz—who did not enjoy his

supervisory duties as a lieutenant—requested and received a demotion to patrol officer—the position that Sullivan hoped to receive.

Sullivan sued the defendants under Title VII and § 1983, alleging that the defendants discriminated against her and violated her Fourteenth Amendment equal protection rights by firing her because she is a woman. In response to the defendants' motion for summary judgment, Sullivan argued that she had made a prima facie case of discrimination by showing (1) that she was "replaced" by Klementz and (2) that she was treated differently than Maurer. She also argued that she had raised an "inference of pretext and discriminatory motivation" by showing that male probationary officers were given the opportunity to correct performance deficiencies, but she was not.

Without addressing Sullivan's assertion that she was replaced by a man, the district court found "damning" to Sullivan's prima facie case her dual admissions that she had seen Klementz lose control of his car and that Maurer neither saw the accident nor had any reason to think an accident had taken place. The court thus granted the defendants summary judgment.

## II. Analysis

On appeal Sullivan renews her argument that she has satisfied the fourth element of her prima facie case under the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), by demonstrating that she was replaced by a man and that she was treated differently than Maurer, whom she considers similarly situated to her. She also argues that she has submitted evidence showing that the defendants' explanation for her termination—she was derelict in her duty to aid Klementz—is pretextual.

Although the parties focus on whether Sullivan has met the fourth element of the prima facie case for discrimination, we recently noted that where an employer offers a legitimate, nondiscriminatory explanation for firing a plaintiff, "it doesn't matter" whether the plaintiff presented a prima facie case. *See Brewer v. Bd. of Tr. of the Univ. of Ill.*, No. 06-1259, 2007 WL 841039, *6 (7th Cir. Mar. 21, 2007) (citing *St. Mary's Honor Ctr. v. Hicks.*, 509 U.S. 501, 510-11 (1993)). Here, the defendants offered such an explanation; they assert that Sullivan was fired because she failed in her duty to render aid to a fellow officer. Thus the question is whether Sullivan has created a genuine issue of fact as to whether that explanation is insincere and whether the defendants intentionally discriminated against her. *See Hicks*, 509 U.S. at 511.

Sullivan first offers as evidence of pretext what she describes as the defendants' shifting explanations for her termination. She asserts that the defendants originally argued that Sullivan was fired because she saw the entire accident—including the car's collision with the sign and tree—but then offered the "new defense" that she was fired for failing to render aid after seeing just the first part of the accident—when the car spun out and jumped the curb. Contrary to Sullivan's assertions, a review of the defendants' filings reveals that they consistently explained that she was fired for failing to render aid after seeing Klementz's car lose control, spin out, and jump a curb. Sullivan's argument is particularly untenable because even her complaint acknowledges that Leck fired her for "her failure to stop *when Klementz'[s] car went off the road*." Her own allegation contradicts her argument here that the defendants offered shifting explanations for their decision to fire her.

Sullivan also asserts that a jury could infer pretext from the defendants' different treatment of Mauer, whom she considers similarly situated. But as the district court found, Sullivan's own admissions demonstrate that her conduct on the night of Klementz's accident was substantially *dissimilar* from Maurer's. She told Leck and O'Dell during the investigation that she saw Klementz's squad car drive over the curb and now concedes that she saw Klementz "lose control of his squad car while he was traveling at 40 miles per hour, and she saw him 'spin out,' [and] jump the curb while his squad was traveling backward and sideways." In contrast, she admits that Maurer did not witness "any part" of the accident "nor did he have any reason to believe that Michael Klementz had been involved in an accident." Accordingly, only Sullivan failed to act when she should have.

Sullivan argues that these distinctions are unimportant because, as their accident reports indicate, both she and Maurer assumed (albeit wrongly) that Klementz had just "pulled his car out of service." But Chief Leck concluded that Maurer's assumption was reasonable while Sullivan's was not. Leck decided to fire Sullivan only after reviewing all of the accident reports, including the investigator's report stating that Klementz's car spun 180 degrees before going over the curb. He decided that Sullivan's report that she saw the car "drive up over the curb" more precisely meant that she saw the car spin out and jump the curb backwards, a conclusion Sullivan admits is accurate. By contrast, his investigation confirmed that Maurer did not see the accident, a conclusion with which Sullivan also agrees. It follows that only she had reason to believe Klementz might have been injured, and, therefore, only she violated police procedure by driving away without rendering aid or calling for help.

Sullivan also argues that a jury could infer that discrimination was the defendants' true motivation because she has offered evidence that male officers

were given opportunities to correct performance deficiencies whereas she was fired summarily. Sullivan compares herself to three male probationary officers: Dale Steffes, Robert Geitz, and Maurer. Steffes behaved inappropriately on several occasions before he was fired, including using the term "butthead" in a daily log, being rude to citizens, and driving recklessly. Geitz's probation was extended to allow him to address concerns about his intimidation of younger officers, failure to follow instructions, and submission of inaccurate reports. Maurer's probation was extended when he failed to attain the requisite college credits on time due to a work-related injury. Unlike Sullivan, none of them failed to render aid to an officer in need. *See Ezell v. Potter*, 400 F.3d 1041, 1049-50 (7th Cir. 2005) (noting that employees are comparable where they engaged in conduct without "differentiating or mitigating circumstances").

More importantly, the record shows that Sullivan was given the opportunity to cure shortcomings less serious than her failure to render aid. For example, her reviewing superior reported that while her overall performance was satisfactory, she had conflicts with coworkers, deficiencies in enforcing speed limits, and trouble submitting proper reports and associated paperwork. She, like the male probationary officers, was given the opportunity to do better. Accordingly, the defendants' treatment of Sullivan compared to their treatment of male probationary officers does not raise a question of fact as to whether the defendants more likely than not fired Sullivan because she is a woman. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004).

Sullivan has not raised a genuine issue of material fact as to whether the defendants' explanation for her termination is pretextual or whether her gender is the real reason she was fired. Accordingly, we AFFIRM the district court's grant of summary judgment for the defendants.